**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Golden Star Mine LLC,
Plaintiff,
v.
Renegade Mining & Milling LLC,
Defendant.

No. CV-24-02386-PHX-DGC

**ORDER**

Plaintiff Golden Star Mine LLC claims to hold valid unpatented mining claims in Gila County, Arizona, and asserts that Defendant Renegade Mining & Milling LLC has interfered with those claims. Doc. 1. Plaintiff sues Defendant for trespass, quiet title, and declaratory judgment. *Id.* The parties have filed cross-motions for summary judgment. Docs. 35, 44. The motions are fully briefed and no party requests oral argument. For the reasons stated below, the Court will grant Plaintiff's motion and deny Defendant's motion.

## I. Background.

### A. Federal and Arizona Mining Law.

Mining claims are governed by the General Mining Act of 1872 (Mining Act) (codified as amended at 30 U.S.C. §§ 22-54) and § 314 of the Federal Land Policy and Management Act of 1976 (FLPMA) (codified as amended at 43 U.S.C. § 1744). *Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 82 (2017). The Mining Act opens public lands for exploration and the location of valuable mineral deposits, and permits the locators of minerals to obtain exclusive rights to mine the minerals. 30 U.S.C. § 22.

"A mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent." *Belk v. Meagher*, 104 U.S. 279, 283 (1881).

The Mining Act "recognizes two types of property rights: patented and unpatented." *Saltzman v. United States*, No. 2024-1785, 2025 WL 271615, at *1 (Fed. Cir. Jan. 23, 2025). "[A] patented claim results in fee title to the land passing from the U.S. government to the claim holder." *Id.* (citation modified). An unpatented mining claim "confers a possessory right to a mineral deposit and the lands containing it, but not fee title." *Id.*; *Pub. Serv. Co. v. Bleak*, 656 P.2d 600, 605 (Ariz. 1982). In creating unpatented mining claims, "Congress has seen fit to ma[ke] the possession of that part of the public lands which is valuable for minerals separable from the fee, and to provide for the existence of an exclusive right to the possession, while the paramount title to the land remains in the United States." *Belk*, 104 U.S. at 284.

To obtain an unpatented mining claim, one must locate and record the claim. Federal law provides general guidelines for locating and recording mining claims, but also permits state laws to elaborate on, but not conflict with, the basic federal requirements. *See* 30 U.S.C. § 28.

Arizona law requires a prospector to locate, record, and monument the claim to obtain a possessory right. A.R.S. §§ 27-202 to 27-204. "Location of a lode claim shall be made by erecting on the surface on the centerline within the boundaries of the claim a conspicuous monument of stones not less than three feet in height, or an upright post securely fixed and projecting at least four feet above the ground," with a location notice affixed to it providing information about the claim. *Id.* § 27-202. The locator must also (1) record a copy of the location notice with the office of the county recorder where the claim is located, and (2) monument the claim on the ground within ninety days of location. *Id.* § 27-203(A). Monumenting a lode claim requires installing "six substantial posts projecting at least four feet above the surface of the ground, or by substantial stone

monuments at least three feet high, one at each corner of the claim and one at the center of each end line of a lode claim." *Id.* § 27-204.

If the locator of an unpatented mining claim complies with these federal and state mining requirements, the locator acquires the "exclusive right of possession and enjoyment of all the surface included within the lines of their locations." 30 U.S.C. § 26. This exclusive right means the land is no longer open for the location of claims by others, and any efforts by others to locate a mining claim within the existing claim are void. *Belk*, 104 U.S. at 284 ("[A] relocation on lands actually covered at the time by another valid and subsisting location is void . . . because the law allows no such thing to be done."); *Bagg v. N.J. Loan Co.*, 354 P.2d 40, 45 (Ariz. 1960) ("So long as the rights of an original appropriator of mining property are extant, any attempted location of the property is wholly void.").

A mining locator who acquires an unpatented mining claim "can maintain an action for quiet title or trespass and can seek all the usual remedies available to a landowner for protection of his rights." 2 Am. L. Mining § 36.03 (2d ed. 2026). "[F]ederal and not state law governs the scope of the property rights obtained, although state law governs disputes over possession and certain other matters that arise between mining claimants." *Id.* § 36.04.

**B. Undisputed Facts.**

In 2015, Plaintiff acquired certain unpatented mining claims by deed from Golden Wonder Mine, LLC and Emil and Andy Ropac. Docs. 45 ¶ 1, 51 ¶ 1. Plaintiff did not record the deeds to the mining claims until April 16, 2018. Docs. 45 ¶¶ 3, 20; 51 ¶¶ 3, 20. But Plaintiff did pay annual maintenance fees to the Bureau of Land Management (BLM) before the deeds were recorded and thereafter. Docs. 45 ¶ 5, 51 ¶ 5. The entity from which Plaintiff acquired the claims – Golden Wonder – had "installed four-foot high, visible, mining claim monuments including statutorily required information which [Plaintiff] later replaced with their own monuments and maintained annually." Docs. 45 ¶ 18, 51 ¶ 18.

The year after Plaintiff acquired the claims by deed, on May 12 and September 26, 2016, Defendant attempted to locate mining claims that overlapped Plaintiff's claims. Docs. 36 ¶¶ 2-3, 6; 43 ¶¶ 2-3, 6. Defendant recorded notices of the mining claims' locations and performed "multiple sampling events" on the claims. Docs. 36 ¶ 8, 43 ¶ 8. At the end of 2023, Defendant installed a gate and signs that obstructed vehicle traffic on the mining claims. Docs. 36 ¶¶ 9-10, 43 ¶¶ 9-10, 45 ¶¶ 13-14, 51 ¶¶ 13-14. Plaintiff filed this lawsuit against Defendant on September 10, 2024. Docs. 36 ¶ 29, 43 ¶ 29.

## II. Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Discussion.

The parties' motions focus on two issues. First, the parties dispute who has the better possessory right to the mining claims. Plaintiff argues that it has superior possessory rights because it holds valid deeds to the claims and because Defendant never properly located its claims. Doc. 44 at 4-7. Defendant argues that Plaintiff forfeited its claims by failing to properly maintain them under federal law and regulations, thus giving Defendant the better right. Doc. 50 at 3-5. Second, Defendant argues that the two-year statute of

limitations found in A.R.S. § 12-522 bars Plaintiff's claims. Doc. 35 at 4-8. Plaintiff disagrees. Doc. 42 at 4-6. These issues are interdependent, and their resolution turns on the law of possession.

**A. The Law of Possession and Plaintiff's Superior Right.**

The law of possession applies to actions involving unpatented mining claims. *Rundle v. Republic Cement Corp.*, 341 P.2d 226, 228 (Ariz. 1959) ("All controversies as to mining claims before patent must be determined by the law of possession." (citation omitted)); *Bagg*, 354 P.2d at 44 (same); *Sunburst Mins., LLC v. Emerald Copper Corp.*, No. 3:15-CV-08274 JWS, 2017 WL 4268942, at *2 (D. Ariz. Sept. 25, 2017) ("Actions such as this, where the parties assert competing possessory rights to mine the land but paramount title is held by the United States, are determined by the law of possession." (citation omitted)). Such possessory actions are not typical quiet title actions because fee title is not at issue. Instead, "the parties assert competing possessory rights to mine the land" while fee title remains with the United States. *Id.* Congress has specifically provided that "[n]o possessory actions between persons, in any court of the United States, for the recovery of any mining title . . . shall be affected by the fact that the paramount title to the land in which such mines lie is in the United States; but each case shall be adjudged by the law of possession." 30 U.S.C. § 53.

"The law of possession means that the prior location and occupation carry with them the prior and better right[.]" *Bagg*, 354 P.2d at 44 (quoting 4 Am. L. Mining § 384 (4th ed.)). If first locators comply with federal and state mining laws, they acquire the "exclusive right of possession and enjoyment of all the surface included within the lines of their locations." 30 U.S.C. § 26. "And as between a prior locator in possession and a subsequent locator, the evidence of the prior locator will be viewed in the most favorable light it will justify." *Bagg,* 354 P.2d at 45.

In this case, Plaintiff is the senior claimant because its predecessors were the prior locators. The predecessors deeded the claims to Plaintiff in 2015. Docs. 45 ¶ 1, 51 ¶ 1. Defendant does not dispute that the claims were properly located and does not claim that

there is a gap in the chain of title between Plaintiff and its predecessors. Thus, if the claims were properly maintained by Plaintiff – an issue discussed below – three facts will be established: (1) Plaintiff acquired and retains the exclusive right to possess the claims, (2) the land was not open for the location of claims after Plaintiff received the claims, and (3) any subsequent attempts to locate claims on the land were void. *Belk*, 104 U.S. at 284 ("[A] relocation on lands actually covered at the time by another valid and subsisting location is void"); *Bagg*, 354 P.2d at 45 ("So long as the rights of an original appropriator of mining property are extant, any attempted location of the property is wholly void.").

Defendant attempted to locate and stake its claims in 2016. Docs. 36 ¶¶ 2-3, 6, 8; 43 ¶¶ 2-3, 6, 8. These efforts were void because Plaintiff, in 2015, had acquired the exclusive right to possession of the claims and the land was no longer open for location under the Mining Law. *Belk*, 104 U.S. at 284 ("Mining claims are not open to relocation until the rights of a former locator have come to an end. . . . Hence a relocation on lands actually covered at the time by another valid and subsisting location is void[.]"); *Bagg*, 354 P.2d at 46 (noting that land on which a claim has been properly located and maintained "is not a part of the public domain available for location."). Plaintiff's possessory interest acquired in 2015 is superior to Defendant's effort to locate claims on the property in 2016.

This conclusion is confirmed by the Arizona Supreme Court's decision in *Bagg*. The plaintiff in *Bagg* acquired unpatented mining claims by deed. *Id.* The defendant later attempted to locate a claim on the same property. *Id.* The Arizona Supreme Court ruled that the plaintiff's possessory right was superior. *Id.* The Court relied on the "fundamental rule that a valid locator has exclusive right to possession of his property until after abandonment or forfeiture. Such land, until then, is not a part of the public domain available for location." *Id.* (citations omitted). The defendant's efforts to locate a claim there were therefore void. *Id.* As between the plaintiff's deeded possessory interest and defendant's void actions, the plaintiff had the superior possessory right. *Id.*

The same is true here. Plaintiff's deeded claims grant a right to possession that is superior to Defendant's later efforts to locate claims on the property.

**B. Plaintiff's Claim Maintenance.**

Defendant argues that Plaintiff forfeited its claims by failing to properly maintain them. Doc. 50 at 3. To maintain an unpatented mining claim, a claimant must either pay an annual maintenance fee to BLM or perform assessment work and file evidence of the work. 30 U.S.C. § 28f(a)(1); 43 C.F.R. §§ 3834-35. These steps must be taken each year. 30 U.S.C. § 28(f)(a)(1); 43 C.F.R. §§ 3834-35. If a claimant pays the annual maintenance fee, he must include a list of the mining claims he is paying for. 43 C.F.R. § 3834.12. Failure to pay the fee or submit evidence of assessment work before the due date will result in forfeiture of the mining claims. *Id.* § 3830.91.

Plaintiff argues that maintenance fees have been paid for its mining claims every year. Doc. 44 at 2. Plaintiff attaches BLM maintenance fee receipts for the 20 claims Plaintiff received by deed in 2015. The claims are numbered 379509-511, 387835, 404892-896, and 427784-794. *See* Doc. 43 at 10-13 (2015 deeds listing transferred claims). Plaintiff has produced BLM receipts showing maintenance fee payments for these claims for the years 2016 to 2021. *See* Doc. 43 at 22-24, 27-32, 34-36, 42-43.

Defendant appears to admit the maintenance fees were paid. Plaintiff's complaint alleged that Plaintiff or its predecessor always paid maintenance fees for the mining claims or caused them to be paid. Doc. 1 ¶ 13. In response to this allegation, Defendant's answer said: "On information and belief Defendant admits that annual maintenance fees were paid but denies that they were paid in accordance with federal law to maintain the Mining Claims." Doc. 26 ¶ 13. Defendant thus admits the fees were paid, but argues they were not paid properly. Defendant argues that the improper payment of fees resulted in forfeiture of Plaintiff's mining claims. Doc. 50 at 3. Defendant makes several arguments.

First, at the motion to dismiss stage, Defendant argued that the fees could be paid only by the actual holder of the mining claim. Doc. 11 at 3. Defendant argued that Plaintiff was not the holder of the claims when it paid fees before 2017 because Plaintiff did not file a notice of claim transfer with BLM until 2017. *Id.* at 4. As a result, Defendant argued,

Plaintiff's predecessor was still the holder of the claims and was required to pay the fee. *Id*.

Defendant initially appears to repeat this argument in its response to Plaintiff's motion for summary judgment. Defendant argues that because the Mining Law and the FLPMA obligate the "owner" or "holder" of an unpatented mining claim to take certain actions to maintain the claim, only the owner or holder of the claim may pay the maintenance fee. Doc. 50 at 3-4. While it is true that the "owner" or "holder" must maintain the claim, 43 U.S.C. § 1744(a), 30 U.S.C. § 28f(a)(1), the Court does not read this statute and regulation as stipulating that only the owner or holder can actually pay the fee. The federal regulation governing payment does not say so, and the only information required to pay the annual fee is identity of the claims. 43 C.F.R. § 3834.12. Plaintiff's annual BLM fee receipts identify the mining claims for which the fees are paid. *See* Doc. 43 at 22-24, 27-32, 34-36, 42-43. The regulations do not say that an owner or holder is barred from having another entity pay the fees, and Defendant cites no authority supporting this argument. Doc. 50 at 4. The argument is not persuasive.

After laying out this argument, however, Defendant changes course. Its response to Plaintiff's motion says: "Plaintiff also argues that one party can make a payment on behalf of another, *a point that is not disputed* and is immaterial to Plaintiff's argument." *Id.* (emphasis added). Defendant thus no longer disputes that one party can pay fees on behalf of another. Defendant explains why it is changing position: "This is not contended since it was shown that Plaintiff's Manager made a payment on behalf of [Defendant], as the claimant, for some of its Mining Claims." *Id.* In other words, Defendant now argues that maintenance fees were paid by one of Plaintiff's employees for Defendant, a payment it apparently wants the Court to honor, so it no longer argues that payment of the fee by someone other than the owner or holder of the claims is invalid.

Second, Defendant asserts that Plaintiff's maintenance fee payments in two years – 2016 and 2017 – were invalid. *Id.* Defendant notes that Plaintiff did not notify BLM that the mining claims had been transferred to Plaintiff until 2017, something Plaintiff does not

dispute. Doc. 50 at 3; *see also* Doc. 43 at 25-26 (2017 receipt for payment of the transfer fee). Defendant correctly observes that federal regulations say BLM will not recognize a successor's interest in a claim until a notice of transfer is filed, and will continue to regard the predecessor as responsible for maintaining the claim until the notice is received. *See* 43 C.F.R. § 3833.92. Defendant argues that Plaintiff's payment of the maintenance fees in 2016 and 2017 was not valid because the transfer had not been filed and the forms Plaintiff filed with the fees in those years did not list Plaintiff's predecessors as the claimant. Doc. 50 at 4.[1]

Defendant cites no authority for the proposition that a fee paid by a party for the claim owner is invalid if the claim owner is not listed as the claimant on documents submitted with the payment. The regulation Defendant cites merely defines a transferee's rights to receive notices of competing claims from BLM and to participate in administrative processes. 43 C.F.R. § 3833.92. Nowhere does it contemplate claim forfeiture, and the Court will not imply forfeiture from the regulation.

Moreover, while the regulations do not say that an entity paying the fee must identify the owner or holder of the claim, they do say the payment must identify the mining claims covered by the payments. 43 C.F.R. § 3834.12. Defendant does not contend that Plaintiff failed to identify the claims for which it was making payments. In fact, receipts produced by Plaintiff list the claims covered by the payments (*see* Doc. 43 at 22-24, 27-32, 34-36, 42-43), and they are the same claim numbers listed in the 2015 deeds transferring the claims to Plaintiff (Doc. 43 at 10-13).[2]

---

[1] Defendant is incorrect in arguing that the transfer had not been noticed to BLM when the 2017 fees were paid. The transfer fee was paid at the same time as the maintenance fees. *See* Doc. 43 at 25-26.

[2] Two notes about the receipts. First, the 2016 receipt lists 20 mining claims, but does so by identifying only the first number in a consecutive sequence of numbers and then listing the number of consecutive numbers. Thus, for example, "427784-11" reflects the first number (427784) in a consecutive list of 11 numbers. These in fact are correct consecutive numbers for claims deeded to Plaintiff. *See* Doc. 43 at 11 (listing 11 consecutive claim numbers – 427784 through 427794). Second, the 2017 receipt does not list all claim numbers. Doc. 43 at 24. The receipt for that year does not include the attachment used in other years to list the mining claims, but it does list one claim number

Third, as noted above, Defendant argues that the 2016 maintenance fees were in fact paid for *Defendant* by an employee of Plaintiff. Doc. 46 at 8-9 & n.1. Defendant cites a 2016 BLM receipt showing a maintenance fee payment by Kyle Parker, an employee of Plaintiff, listing Defendant as the claimant. *See* Doc. 43 at 102-03. Parker swears in a declaration that these fees were for a different investment opportunity. *Id.* at 100. Confirming Parker's declaration, the 2016 receipt cited by Defendant shows the payment was not for mining claims at issue in this case. The claims covered by Parker's payment are listed on the receipt (438226-438240) and none of them match the mining claim numbers Plaintiff received by deed in 2015. *Compare id.* at 10-13, *with id.* at 102. The evidence shows there was a separate 2016 payment for Plaintiff's mining claims, as reflected in a different BLM receipt. *See id.* at 22-23. This receipt lists the correct claim numbers and does not show Defendant as the claimant. *Id.*

In summary, none of Defendant's arguments show that annual maintenance fees were paid incorrectly or were paid for Defendant. BLM receipts show fees were paid in 2016 and 2017 for Plaintiff's 20 claims. The Court cannot conclude, therefore, that Plaintiff failed to maintain the claims and forfeited its interest in them. Plaintiff took the steps required to maintain the claims it received by deed in 2015.[3]

**C. Statute of Limitations.**

Defendant bases its motion for summary judgment entirely on the two-year statute of limitations found in A.R.S. § 12-522. Doc. 35 at 4-8. The statute provides:

> When a party in possession claims real property by right of possession only, actions to recover possession from him shall be commenced within two years

---

on the first page (427784), which is among the claims Plaintiff received by deed, and it shows payment for 20 claims – the number of claims Plaintiff received by deed in 2015. Further, the amount paid ($3,100) is 20 times the fee amount of $155. Thus, Plaintiff did pay the maintenance fees in 2017 for all 20 claims. Defendant does not argue the payment was invalid because all of the claim numbers were not listed on the first page of the receipt.

[3] Defendant does not contend that the 2015 deeds to Plaintiff were invalid because Plaintiff waited until 2018 to record them, or that the deeds were invalid because Plaintiff waited until 2017 to file a transfer notice with BLM. Plaintiff was thus the owner of the unpatented mining claims from 2015 forward. Other than the 2016-2017 payment issues discussed and rejected above, Defendant does not argue that Plaintiff failed to maintain the claims.

> after the cause of action accrues and not afterward. In such actions defendant is not required to show title or color of title from and under the sovereignty of the soil as against the plaintiff who shows no better right.

A.R.S. § 12-522. This statute includes mining claims. *Id.* § 12-521(a)(3). Defendant has the burden of proving the statute of limitations applies. *Est. of Page v. Litzenburg*, 865 P.2d 128, 135 (Ariz. Ct. App. 1993).

The statute protects "a party in possession" who claims real property by right of possession only. § 12-522. Defendant argues it is a party in possession by virtue of its recording the claims in 2016, erecting location stakes in 2016, sampling ore within the claims several times, sharing assay reports with Plaintiff in 2016, and placing a gate and signage on the property in 2023. Doc. 35 at 2-3. Defendant also argues that it claims its interest in the mining claims "by right of possession only," as required by the statute, because a right of possession is precisely what it acquired through its actions in 2016 and 2023. *Id.* at 4-5.[4]

The statute does not apply to this case. By its terms, the statute can be invoked only by "a party in possession" of the property. § 12-522. As explained above, Defendant is not and has not been in possession of the mining claims. Plaintiff received the mining claims by deed and thereby acquired the "exclusive right of possession and enjoyment of all the surface included within the lines of their locations." 30 U.S.C. § 26. Plaintiff's claims were located before Defendant attempted to locate claims on the property, and Plaintiff and its predecessors took the steps necessary to maintain their claims. The land where the claims are found was therefore not in the public domain in 2016, and claims could not be located on it under the Mining Act. Defendant's efforts to locate claims in 2016 were "void" under Supreme Court and Arizona law. *Belk*, 104 U.S. at 284; *Bagg*, 354 P.2d at 45. Because Defendant never came into possession of the claims, it is not "a

---

[4] Plaintiff argues that this is a quiet title action and no statute of limitations applies to quiet title actions under Arizona law. Doc. 42 at 6. The Court need not reach this argument because it finds that § 12-522 does not apply.

party in possession" as required by the plain language of § 12-522 and cannot invoke the limitations period.

The Court also finds that application of § 12-522 to this case would distort Arizona law. The statute has existed from Arizona's territorial days (Ariz. Civ. Code § 2941 (1901)), and yet Defendant cites no case where it has ever been applied to facts like these. *See* Doc. 35 at 4-8. Nor has the Court found such a case. Arizona statutes that recognize acquisition of title by adverse possession require a longer period of open and adverse possession. *See, e.g.*, § 12-523 (three-year limitations period to recover real property from an adverse possessor claiming rights under title or color of title); § 12-526 (ten-year limitations period to recover real property from an adverse possessor of land). Defendant makes no claim that the three-year statute of limitations applies in this case, and Defendant specifically states that it is not claiming title by adverse possession. Doc. 46 at 3.

Applying § 12-522 to this case would allow individuals to defeat valid possessory rights in unpatented mining claims simply by doing minimal activity on the property for two years. Defendant cites no authority suggesting this was the intent of § 12-522, nor does Defendant explain why the statute has never been used for this purpose in the 125 years since it was adopted. Moreover, the activities Defendant conducted – entering the property, erecting location stakes, and sampling – are far less than the continuous, open, and notorious actions required under Arizona's adverse possession law. *Birchfield v. Thiercof*, 428 P.2d 148, 153 (Ariz. Ct. App. 1967) (possession "must be open, notorious, exclusive and [c]ontinuous, and not loose, uncertain, scrambling and mixed." (citation omitted)). The Court cannot accept Defendant's invitation to create a new tool for acquiring unpatented mining claims through minimal possession for two years.

**D. Defendant's Other Arguments.**

Defendant makes other arguments that do not defeat Plaintiff's motion for summary judgment. Defendant argues that Plaintiff conceded on at least two occasions that Defendant was the rightful owner of the claims.

First, Defendant argues that on September 19, 2016, its owner, Michael Richey, visited Plaintiff's mining laboratory near the mining claims for a discussion with Plaintiff's principal, Cvetko Fink. Fink recorded the conversation without Richey's knowledge, apparently because English is Fink's second language and he made the recording to later confirm his understanding of the conversation was correct. Doc. 44 at 3 n.1. The recording was transcribed, and both sides have used it as an exhibit in support of their motions.

Richey's purpose in the discussion was to explain that he had a book showing the actual location of minerals on Plaintiff's mining claims (apparently Richey's family had worked the claims in the past, but had let the claims lapse some years earlier). Richey told Fink that for $1,000,000 and an interest in the mine's profits, Richey would give Fink the book and help him locate the valuable minerals. Fink did not accept Richey's proposal.

Another of Plaintiff's employees, Bruce Skorupski, was present for the conversation with Richey. Defendant notes that Skorupski said "those laws can shut us down" and "if we don't put something together, you can shut us down when we go to start." Doc. 43 at 66. Defendant argues that these statements show Plaintiff knew Defendant owned the mining claims. Doc. 50 at 2. But this is not an accurate reflection of the conversation.

At the beginning of the discussion, when Richey first said he wanted to work out a deal related to the claims, this exchange occurred:

CVETKO FINK: But these claims are our claims.

MICHAEL RICHEY: That's right. We want you to mine it. Those are your claims.

CVETKO FINK: Yeah. Ours.

MICHAEL RICHEY: We know that.

Doc. 43 at 47. Richey made several similar comments during the conversation:

- "[W]e're not contesting your claims." *Id.* at 62.
- "We have no intention of trying to take your mine from you . . . None." *Id.* at 65.
- "Why would we contest it? You own those claims. They're yours. 100% lock, stock, and barrel. We own nothing. And we know that." *Id.* at 65-66.

- "[Y]ou know, it's not for the reason of going out there and taking a mine from you. That wouldn't work at all. We'd be shut down in two minutes. We know that. There's laws for all that, you know?" *Id.* at 66.
- "We don't want possession of that mine." *Id.*

Given this consistent theme in Richey's comments, the Court cannot conclude that Skorupski was expressing doubt about Plaintiff's ownership of the claims. His statements occurred in the midst of a discussion about litigation and more likely reflected a concern that Defendant could use their 2016 activities to claim an interest in the mine and to commence litigation that would shut down current mining operations until the litigation was complete. Further, Defendant does not show that Skorupski had authority to speak on behalf of Plaintiff. In any event, a reasonably jury could not conclude from the recorded conversation that Plaintiff believed Defendant owned the claim. Fink's and Richey's clear statements show the opposite is true – Defendant knew Plaintiff owned the claims.

Second, Defendant notes that "[o]n July 24, 2024, Plaintiff requested that [Defendant] sign a quit claim deed for the Mining Claims that 'assigns, transfers, conveys, and quit claims' all of [Defendants] 'legal and equitable title or interest in or to . . . real property situated in the County of Gila, State of Arizona.'" Doc. 35 at 3. Defendant argues that this request shows Plaintiff knew Defendant owned the claims. *Id.* Plaintiff states, however, that it sought the quit claim deed before filing this lawsuit. Doc. 42 at 4. Such a deed would have made this litigation unnecessary. Without such a deed, Plaintiff was faced with the fact that Defendant was entering its mining claims and had erected a fence on the claims to block vehicle traffic.

What is more, Plaintiff made its position clear when it recorded a document in 2019 which stated that it owned the mining claims, that Defendant's 2016 locations were made after Plaintiff's claims were established, and that any overlapping claims by Defendant would be considered claim jumping. *See* Doc. 36-1 at 51.

A reasonable jury could not conclude from the request for a quit claim deed that Plaintiff knew Defendant owed the claims. *Anderson*, 477 U.S. at 248. This is particularly

true in light of Plaintiff's 2019 notice and the undisputed evidence, as discussed above, that Plaintiff clearly held a prior and superior interest in the claims.

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 35) is **denied** and Plaintiff's motion for summary judgment (Doc. 44) is **granted.** The Court enters judgement in favor of Plaintiff on the declaratory judgment and trespass claims.[5]

Dated this 19th day of November, 2026.



David G. Campbell
Senior United States District Judge

[5] The Court does not find for Plaintiff on the quiet title claim because of ambiguous Arizona law on whether a quiet title action can be brought for possession of unpatented mining claims. *Compare Rundle*, 341 P.2d at 227, 231 (affirming a judgment quieting title to unpatented mining claims), *and Sunburst Mins. LLC v. Emerald Copper Corp.*, 818 F. App'x 604, 607 (9th Cir. 2020) (same), *with Bagg*, 354 P.2d at 46 (modifying a judgment quieting title to an unpatented mining claim because the action did not determine title and affirming the part of the judgment declaring that defendant was without interest and ordering "the return to plaintiff of all personalty held or retained by defendant").